UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   10/27/2022

UNITED STATES OF AMERICA,

   -v.-

DARNELL KIDD,

               Defendant.

20-CR-572 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

By indictment dated October 26, 2020, Defendant Darnell Kidd ("Defendant") was charged with killing another person with firearm during and in furtherance of a robbery. (Indictment, ECF No. 2.) Trial is scheduled to commence on November 7, 2022.[1]

In anticipation of trial, the Government moves *in limine* to admit the following evidence: (1) statements by Defendant's co-conspirator and a witness ("Witness-1") before and after the charged robbery-murder; (2) co-conspirator's confession to a witness ("Witness-2"); (3) Defendant's confessions to two witnesses on two separate occasions (respectively, "Witness-3" and "Witness-4"); (4) Defendant's gang membership, prior incarcerations, prior armed robberies, and prior convictions. Additionally, the Government seeks to preclude cross-examination of its witnesses regarding certain subjects. (ECF No. 67.)

For the following reasons, the Government's motions are GRANTED in part and DENIED in part.

---

[1] Defendant submits that he has no motions *in limine* to file at this time, but reserves the right to move *in limine* upon receipt of new disclosures from the Government or in response to a motion by the Government. (ECF No. 65.)

1

**DISCUSSION**

The Government charges that, on March 18, 2011, Defendant and co-conspirator Marcus Chambers shot Jonathan Johnson ("Victim") during what the Victim had believed to be a marijuana sale. (Indictment at 1-2.) The Victim died from gunshot wound on the same day.

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (internal citation and quotation marks omitted); *see generally Luce v. United States*, 469 U.S. 38 (1984). Upon such a motion, the Court is called upon "to make a preliminary determination on the admissibility of the evidence," *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005), and only evidence that is "clearly inadmissible on all potential grounds" should be excluded on a motion *in limine. United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001) (internal citations omitted).

**I.    Conversations between Co-Conspirator Marcus Chambers and Witness-1**

The Government first seeks to admit various out-of-court statements by Witness-1 before and after the alleged murder. Witness-1 is acquainted with Defendant's co-conspirator, Marcus Chambers ("Chambers") and had sold marijuana to Chambers prior to March 18, 2011. Specifically, Witness-1 is expected to testify to his and Chambers' statements from the following four occasions:

> (1) In or about March 2011, Chambers contacted Witness-1 to buy marijuana. Witness-1 told Chambers that he could not personally sell the marijuana, but could call other people and see if someone had the marijuana to sell. ("Statement #1," Gov. Mem. at 5, ECF No. 67.)

(2) Witness-1 spoke with the Victim, who agreed to sell Chambers marijuana. ("Statement #2," Gov. Mem. at 5.)

(3) On March 18, 2011, after the charged murder, Witness-1 met Chambers and Defendant—whom Witness-1 had not previously known or met—and walked with them into a building elevator. Upon hearing police sirens in the background, Witness-1 heard Defendant say: "It's over with," to which Chambers responded: "No, it's not. We getting the fuck out of here." ("Statement #3," *id*. at 6.)

(4) A few days after March 18, 2011, Witness-1 spoke with Chambers over the phone. Chambers asked what Witness-1 had told the police about the events of March 18, 2011. Witness-1 denied telling the police anything. Chambers insisted that Witness-1 had told the police something and that they needed to meet. ("Statement #4," *id*. at 6.)

(5) A few months after March 18, 2011, Witness-1 saw Defendant during a visit to the New York State Parole Division in New Rochelle, New York. Witness-1 recognized Defendant as the individual who was with Chambers on March 18, 2011. Witness-1 became frightened due to his prior call with Chambers. ("Parole Encounter," *id*. at 6-7.)

(6) The Government additionally notes that the New Rochelle parole records confirm that both Witness-1 and Defendant reported to the Parole Office on May 17, 2011, among other dates. ("New Rochelle Parole Records," *id*. at 6-7)

The Government asserts that the above-listed statements by Witness-1 and Chambers are admissible under Federal Rule of Evidence 801(d)(2)(E), which prescribes that co-conspirator statements during and in furtherance of the conspiracy is admissible. Fed. R. Evid. 801(d)(2)(E). Defendant argues that: (1) Statement #1 and #2 are inadmissible hearsay because there was no

conspiracy between Defendant and Chambers when Chambers spoke with Witness-1 before March 18, 2011; (2) Statement #4 is inadmissible hearsay because there was no evidence of an ongoing conspiracy between Defendant and Chambers when Chambers spoke with Witness-1 after March 18, 2011. Defendant raises no specific objections as to Statement #3.

To admit a statement under 801(d)(2)(E), "a court must find (1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *United States v. Saneaux*, 365 F. Supp. 2d 493, 497 (S.D.N.Y. 2005) (citing *United States v. Tracy,* 12 F.3d 1186, 1196 (2d Cir.1993)). Whether a proffered statement is made in furtherance of a conspiracy is "a preliminary question of fact to be determined by the trial court by a preponderance of the evidence." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1198 (2d Cir. 1989). The principal question in the "in furtherance" issue is whether the statement promoted, or was intended to promote, the goals of the conspiracy. *Id*. at 1198.

As to Statements #1 and #2, the Second Circuit held in *United States v. Badalamenti* that co-conspirator statements made before a defendant joined the conspiracy are admissible if "there is sound reason to believe that [a defendant] joined when he was generally aware of what his new partners had been doing and saying on behalf of the enterprise." 794 F.2d 821, 828 (2d Cir. 1986) (citing 4 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 801(d)(2)(E)[01], at 250–51 (1985)). Here, Defendant's participation in the drug transaction on March 18, 2011—a deal arranged by Statements #1 and #2—indicates Defendant's general awareness of what Chambers "had been doing and saying," namely arranging the transaction. *Badalamenti* at 828. Accordingly, Statements #1 and #2 fall within the definition of Rule 801(d)(2)(E) and are thus admissible.

4

As to Statements #3 and #4, the Court concludes that both statements were intended to promote the goals of the conspiracy, which, in this case, is for Defendant and Chambers to evade capture. As the Second Circuit had upheld in *Beech-Nut Nutrition Corp.*, statements designed to "cover up" are in furtherance of the conspiracy. 871 F.2d at 1199. Accordingly, both Statements #3 and #4 are admissible.

With respect to the Parole Encounter, the Government avers that Witness-1's recognition of Defendant "makes it more likely that [Defendant] was the individual Witness-1 saw" on March 18, 2011. (Gov. Reply. at 18.) However, the Government's submission shows that Witness-1 was unable to recall the exact date on which he saw Defendant at the parole office.[2] Given the inexactness of Witness-1's testimony and the temporal distance between the alleged encounter and March 18, 2011, the Parole Encounter espouses limited probative value, which is outweighed by its prejudicial effect. (Def. Opp. at 16-17.) *See* Fed. R. Evid. 403. Accordingly, the Parole Encounter and the related parole records will not be admitted.

**II.   Co-Conspirator Marcus Chambers' Confession to Witness-2**

The Government next seeks to offer the testimony of Witness-2, an acquaintance of Chambers. Witness-2 is expected to testify to Chambers' confession that he was involved in a "botched robbery" in White Plains during which the victim was shot and killed. (Gov. Mem. at 7.) Specifically, in or about 2011, Witness-2 learned from another individual ("Individual-3")[3] that Chambers had attempted to rob someone of marijuana in White Plains, and that the victim was killed during the robbery. Witness-2 then spoke with Chambers directly by phone and asked

---

[2] The Government recounts that the Parole Encounter took place "a few months" after March 18, 2011. (Gov. Mem. at 6-7.) The Government appears to suggest that the encounter date was "May 17, 2011, among other dates." (*Id.* at 6-7.) This contention appears to be speculative at best.

[3] According to the Government's Reply, Individual-3 will not be testifying at trial. (Gov. Reply at 15-16, n.4.) The Government provides no information as to how Individual-3 became aware of Chambers' involvement in the White Plains robbery-murder. The Government indicates that it will identify Individual-3 when it identifies Witness-2. (Gov. Reply at 15-16, n.4.)

5

Chambers about the incident. According to Witness-2, Chambers confirmed that the incident did take place, and told Witness-2 that he did not want to talk about it.

The Government asserts that (1) the conversation between Witness-2 and Individual-3 is offered not for the truth of Individual-3's statement, but only as context for Chambers' subsequent confession; and (2) Chambers' admission to Witness-2 is admissible as a statement against penal interest. The Government provides that it will not call on Chambers to testify, as Chambers' attorney has confirmed that Chambers is expected to invoke his Fifth Amendment privilege. The Government has not particularized any of the statements. Defendant avers that (1) Chambers is not unavailable under Rule 804; and (2) because there is no allegation that Chambers implicated Defendant in his conversation with Witness-2, the testimony will only prejudice the jury against Defendant.

With respect to Individual-3's statements to Witness-2, there is a layer of hearsay the Government fails to overcome. While Chamber's conversation with Individual-3 concerning the "botched robbery" in White Plains falls within an exception of the hearsay rule, Individual-3's conversation with Witness-2, from whom the government seeks to proffer the relevant testimony, does not fall within any exception. Individual-3's statements to Witness-2 are thus inadmissible even for the purpose of providing context.

Any statements made by Chambers himself to Witness-2 during their subsequent phone call fall within the parameter of both Rule 804(b)(3)(A) and (B), since the admission exposes Chambers to criminal liability and is supported by corroborating circumstances, including Chambers' presence with Defendant in White Plains on March 18, 2011, and death of the Victim. Moreover, Chambers' statements have high probative value for the instant case due to Defendant's participation in the March 18, 2011 events with Chambers. Accordingly, Chambers' statements to

6

Witness-2 are admissible. However, because all Individual-3's statements to Witness-2 are inadmissible hearsay, the Government is not permitted to elicit any information as to the White Plains robbery that Chambers himself did not specify to Witness-2.

As to the availability of Chambers, the Second Circuit has held that "non-testifying witnesses who invoke the privilege against self-incrimination remain unavailable to the Government, despite its authority to confer immunity on them." *United States v. Dolah*, 245 F.3d 98, 103 (2d Cir. 2001), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004). Thus, Chambers is unavailable under Rule 804. The parties referenced a jury instruction as to the unavailability of Chambers, but the parties' submissions are deficient on the specific content of the instruction. Accordingly, the Court reserves determination on a potential jury instruction on this issue pending the final pretrial conference. (Def. Opp. at 6; Gov. Reply at 16, n.5.)

### III.     Defendant's Confession to Witness-3

The Government seeks to elicit from Witness-3 a confession by Defendant and its context. Specifically, Witness-3 met Defendant in 2011 when they were incarcerated together. Witness-3 is expected to testify that Defendant appeared nervous when detectives came to the facility. Witness-3 asked Defendant why he was nervous, and Defendant confessed to Witness-3 the charged murder.

As to Defendant's confession to Witness-3, Rule 801(d)(2)(A) provides that "a party's own statement, if offered against him, is not hearsay." *United States v. Pedroza*, 750 F.2d 187, 202 (2d Cir. 1984) (internal citations omitted). Here, Defendant's confession to Witness-3 is plainly admissible against Defendant as an admission under Rule 801(d)(2)(A). Accordingly, Witness-3 may testify to Defendant's admission.

The fact that Witness-3 and Defendant were incarceration together when Defendant made the confession is probative and relevant: it provides the necessary context for the confession and explicates the relationship between Witness-3 and Defendant, without which the jury cannot understand or properly weigh Defendant's confession to Witness-3. The Court concludes that such probative value is not substantially outweighed by any potential unfair prejudice. To minimize the prejudicial taint of the incarceration evidence, the Government is not permitted to elicit evidence from Witness-3 regarding the reasons for Defendant's incarceration.

Accordingly, Witness-3 may testify to his incarceration with Defendant during which Defendant's confession took place.

### IV. Defendant's Confession to Witness-4

The Government seeks to elicit from Witness-4 a confession by Defendant and its context, including Defendant's gang membership and prior armed robberies. Specifically, Witness-4 is expected to testify that he and Defendant grew up together and were both members of Cruddy 650, a street gang in Yonkers. According to Witness-4, he and Defendant committed multiple armed robberies together, typically targeting marijuana dealers. During one such robbery in 2013 ("the 2013 robbery"), Defendant was striking the victim and Witness-4[4] with a firearm, before abruptly stopping and suddenly become unresponsive. When Witness-4 and Defendant were later incarcerated together, Witness-4 asked Defendant why he had blacked out during the 2013 robbery. Defendant told Witness-4 that he had experienced a flashback to an earlier robbery Defendant had committed with "Chino"[5] in White Plains, during which Defendant was using a

---

[4] The Government clarifies that Defendant "was striking Witness-4, as well as the victim [of the 2013 robbery], because Witness-4 and the victim were taller than [Defendant], and Witness-4 was between [Defendant] and the victim." (Gov. Mem. at 8, n.1.) As a result, while Defendant "was attempting strike the victim, but was hitting Witness-4 in part instead." (*Id*. at 8.)
[5] "Chino" is one of Marcus Chambers' aliases.

8

gun to pistol whip the victim when the gun accidentally discharged and killed the victim. (Gov. Mem. at 8.) Defendant allegedly explained to Witness-4 that the flashback to the White Plains robbery caused him to pause during the 2013 robbery because [Defendant] was scared that the gun would go off and accidentally strike Witness-4. (*Id*. at 8.)

In relation to Defendant's confession to Witness-4, The Government seeks to admit Defendant's gang membership at Cruddy 650 and the other armed robberies he committed with Witness-4, corroborated by public records showing Defendant's racketeering conviction and Defendant's admission to multiple armed robberies of drug dealers. The Government avers that such evidence provides context for Defendant's relationship and mutual trust with Witness-4 and is thus admissible under Rule 404(b).

With respect to Defendant's confession to Witness-4, Rule 801(d)(2)(A) provides that "a party's own statement, if offered against him, is not hearsay." *United States v. Pedroza*, 750 F.2d 187, 202 (2d Cir. 1984) (internal citations omitted). Here, Defendant's explanation to Witness-4 regarding "the earlier robbery" with Chambers in White Plains is plainly admissible against Defendant as an admission under Rule 801(d)(2)(A). This confession's significant probative value outweighs any potential prejudicial effect and is therefore not barred by Rule 403.

As to Defendant and Witness-4's past robberies, including the 2013 Robbery, the Second Circuit "follow[s] an inclusionary rule, allowing the admission of [evidence of other crimes, wrongs, or acts] for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (citing *United States v. Inserra,* 34 F.3d 83, 89 (2d Cir.1994)). In addition, "evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the

same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *Id*. at 44 (internal citation and quotation omitted.)  Here, the past robberies Witness-4 and Defendant committed together ("prior robberies") are probative because such prior robberies "explain how a criminal relationship developed" between the pair and demonstrate Witness-4 and Defendant's "relationship of mutual trust." *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996.) The 2013 Robbery in particular provides the necessary context without which Witness-4's testimony of Defendant's confession would be incomprehensible. The 2013 Robbery is thus of notable relevance and high probative value.

Witness-4's shared gang membership in Cruddy 650 with Defendant and their shared incarceration during which Defendant confessed to Witness-4 about the 2011 incident are also highly probative. The shared gang membership as well as the "prison context for [this conversation] [are] important. [They explain] why (1) the participants in the conversation are together; (2) there is a relationship of trust between them; and [(3) Defendant recounted the 2011 incident to Witness-4]." *United States v. Johnson*, 469 F. Supp. 3d 193, 220 (S.D.N.Y. 2019).

After due consideration, the Court concludes that the probative value of the prior robberies and the incarceration evidence is not substantially outweighed by a danger of unfair prejudice to Defendant. *See* Fed. R. Evid. 403. To minimize the risk of prejudicial taint, the Court will instruct the jury that the prior robberies are not being offered to show Defendant's propensity to commit crime.

Accordingly, Witness-4 is permitted to testify to his shared membership with Defendant in Cruddy 650, the prior robberies they committed together, their subsequent incarceration together, and Defendant's confession.

### V. Defendant's Prior Convictions

The Government seeks to introduce limited evidence concerning Defendant's prior convictions. Specifically, on February 27, 2017, Defendant pled guilty to racketeering conspiracy and using of firearms during the racketeering conspiracy.[6] Defendant's guilty plea included a list of armed robberies targeting drug dealers. (Gov. Mem. at 9.) In addition, Defendant has one other robbery conviction in 2006 and two attempted robbery convictions respectively in 2008 and 2009.

The parties agree that Defendant has not yet put his *mens rea* at issue. (Gov. Mem. at 19-21; Def. Opp. at 12-13; Gov. Reply at 9.) Defendant argues that, at this point, the Government's motion to admit Defendant's prior convictions is premature. The Court agrees. "Prior-act evidence may be offered to prove the defendant's knowledge or intent *only after* the defendant has asserted a state of mind defense, thereby putting knowledge and intent at issue." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 167 (S.D.N.Y. 2006) (citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank,* 30 F.3d 339, 345–46 (2d Cir.1994); *United States v. Myerson,* 18 F.3d 153, 166 (2d Cir.1994); *United States v. Figueroa,* 618 F.2d 934, 939 (2d Cir.1980)) (emphasis added).

Accordingly, except for the prior robberies Defendant committed together with Witness-4 in relation to Witness-4's testimony, Defendant's prior convictions will not be admitted. The Government may renew its motion on this issue if Defendant asserts a state-of-mind defense during the trial.

### VI. Government Witnesses' Prior Convictions and Drug Use

The Government lastly moves to preclude cross-examination of Government witnesses about the witnesses' (1) prior convictions that do not bear on the witnesses' truthfulness; (2) arrests that did not result in a conviction; and (3) personal drug use. Defendant requests more information

---

[6] Respectively in violation of 18 U.S.C. Section 1962(d) and 18 U.S.C. Section 924(c). (Gov. Mem. at 8.)

11

concerning an August 15, 2012 conviction of Witness-3[7] but does not otherwise oppose to the requested preclusions. (Def. Opp. at 17.)

Accordingly, with the exception of Witness-3's August 15, 2012 conviction, the Government's motion concerning cross-examination of its witnesses is granted without objection from Defendant.

## CONCLUSION

For the foregoing reasons, the Government's motions *in limine* are decided as follows:

- Witness-1 may testify to his conversation with Marcus Chambers in March 2011 before the March 18, 2011 incident. (Statements #1 and #2.)

- Witness-1 may testify to what he heard Defendant and Marcus Chambers say on March 18, 2011. (Statement #3.)

- Witness-1 may testify to his phone conversation with Marcus Chambers a few days after March 18, 2011. (Statement #4.)

- Witness-1 is not permitted to testify to his encounter with Defendant at the New Rochelle Parole Division a few months after March 18, 2011. (The Parole Encounter.)
    - The Government is not permitted to offer into evidence any related New Rochelle parole records.

- Witness-2 may testify to his phone conversation with Marcus Chambers.

- Witness-2 is not permitted to testify to any of Individual-3's statements or any information derived therefrom.

---

[7] Specifically, Defendant avers that "with respect to the August 15, 2012 conviction of Witness-3 for possession of contraband in prison, more information should be provided before the Court rules. Namely, what specifically was the contraband, and what information does the Government have with respect to how the contraband entered the facility and came into the possession of Witness-3, including whether any staff at the facility were involved." (Def. Opp. at 17.) The Government responded that it "is gather additional information and will provide it to the defendant and the Court once obtained." (Gov. Reply at 18.)

- Witness-3 may testify to his conversation with Defendant and its context, namely Witness-3's shared incarceration with Defendant.

    - The Government is not permitted to elicit from Witness-3 any testimony regarding the reasons for Defendant's incarceration during which Defendant met Witness-3.

- Witness-4 may testify to his conversation with Defendant, their membership in Cruddy 650, their shared incarceration during which Defendant confessed to Witness-4, and the prior robberies they committed together, which include the 2013 Robbery.

- Except for the robberies in relation to Witness-4's testimony, the Government is not permitted to offer into evidence or elicit testimony regarding Defendant's prior convictions.

    - If Defendant asserts a state-of-mind defense during the trial, the Government may renew its motion on this issue.

- Except for Witness-3's August 15, 2012 conviction, Defendant may not elicit from any of the Government witnesses testimony regarding the witnesses' (1) prior convictions that do not bear on the witnesses' truthfulness; (2) arrests that did not result in a conviction; and (3) personal drug use.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 65 and 67.

Dated: October 27, 2022  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge